UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASTRAZENECA PHARMACEUTICALS LP, et al.,<br><br>　　　　Plaintiffs,<br><br>　　　v.<br><br>INTELLIPHARMACEUTICS CORP.,<br><br>　　　　Defendants. | Civil Action No. 11-2973 (JAP)<br><br>**OPINION** |

PISANO, District Judge.

　　This is a Hatch-Waxman Act patent infringement action brought by Plaintiffs AstraZeneca Pharmaceutical LP and AstraZeneca UK Limited (together, "Astra") based upon the filing by IPC of an Abbreviated New Drug Application ("ANDA") seeking approval from the Federal Food and Drug Administration to market a generic version of Astra's Seroquel XR product.  Defendants Intellipharmaceutics Corp. ("IPC") and Intellipharmaceutics International Inc. ("IPCI") have moved pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss this action for lack of personal jurisdiction or, in the alternative, pursuant to 28 U.S.C. § 1406(a) to transfer this action to the Southern District of New York.  The Court decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons below, Defendants' motion is granted, and this matter is dismissed for lack of personal jurisdiction.

## I. BACKGROUND

The original complaint in this matter was filed on May 23, 2011, and named only IPC as a defendant. IPC immediately challenged the jurisdiction of this Court, seeking to dismiss the complaint or transfer the case to the Southern District of New York. Astra subsequently filed an amended complaint adding IPCI as a defendant. In response to the amended complaint, IPC withdrew its original motion and Defendants filed the instant motion. Briefing on the motion was extended in light of Defendants' agreement to provide jurisdictional discovery.

As of result of IPC challenging the jurisdiction of this Court, Astra filed a "protective suit" in the Southern District of New York in order to preserve its rights to the statutory 30-month stay of FDA approval of IPC's ANDA. Pl. Brf. at 2. Thus, an identical action is presently pending in that district. The New York action, however, has been stayed pending the outcome of this motion. *Id.*

Jurisdictional discovery has been completed. The motion is now fully briefed and ripe for review.

## II. ANALYSIS

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a party may move for dismissal of an action based on lack of personal jurisdiction. *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 300 (3d Cir. 2001). In deciding a motion to dismiss for lack of personal jurisdiction, the Court will construe as true the allegations within the complaint, and shall construe disputed facts in favor of the Plaintiff. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003).

Once personal jurisdiction is challenged, the plaintiff has the burden of establishing that the case is properly before the court. *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). In particular, "the plaintiff bears the burden of demonstrating [that] contacts with the forum state [are] sufficient to give the court *in personam* jurisdiction." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir.1990). A plaintiff may satisfy this burden through the use of affidavits or other competent evidence. *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir.1996).

Generally, "[a] nexus between the defendant, the forum and the litigation is the essential foundation" of personal jurisdiction. *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). The Third Circuit has set forth an analytical framework to determine whether personal jurisdiction over a non-resident defendant is proper. *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998). This analysis begins with an examination of Federal Rule of Civil Procedure 4(e). *Id.* A court must then consider whether the defendant's contacts with the forum state are sufficient to support general personal jurisdiction. *Id.* Absent general jurisdiction, a court should determine whether specific personal jurisdiction exists. *Id.*

Federal Rule of Civil Procedure 4(e) allows a court to exercise "personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Pennzoil Prods. Co.*, 149 F.3d at 200 (citation omitted). New Jersey's long-arm statute allows the exercise of personal jurisdiction over non-resident defendants to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *Nicholas v. Saul Stone & Co.*, 224 F.3d 179, 184 (3d Cir. 2000).

Due Process requires that a defendant have minimum contacts with the forum state and that an exercise of jurisdiction over the defendant comport with " 'traditional notions of fair play and substantial justice.' " *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir.2001) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Further, "minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Asahi Metal Indus. Co.*, 480 U.S. at 109 (quoting Burger King, 471 U.S. at 475). "Essentially, before hearing a case, a court must ask whether 'the quality and nature of the defendant's activity is such that it is reasonable and fair to require [that it] conduct [its] defense in that state.' " *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984) (modifications and emphasis in original) (quoting *Kulko v. Super. Ct. of Cal.*, 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978)). Whether sufficient minimum contacts exist to assert personal jurisdiction depends upon "the nature of the interactions and type of jurisdiction asserted." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006). Where the cause of action does not arise out of or relate to the defendants activities in the forum State, but the defendant has "continuous and systematic" contacts with the forum state sufficient to confer personal jurisdiction, a court is said to exercise general jurisdiction over the defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 n. 9 (1984). On the other hand, a court exercises specific jurisdiction when the defendant has limited contacts with the forum state but the suit against him arises out of or relates to those contacts. *Id.* at 414 n. 8.

Plaintiffs here assert that both general and specific personal jurisdiction exists for Defendants. The Court will examine each in turn.

B. General Jurisdiction

When a party is subject to the general jurisdiction of a state, that party may be called to answer any claim against it, regardless of whether the subject matter of the cause of action has any connection to the forum. *Pennzoil Prods. Co.*, 149 F.3d at 200. Thus, a plaintiff must demonstrate significantly more than "minimum contacts" to establish general jurisdiction over a defendant. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir.1987). In order to establish general personal jurisdiction, a plaintiff must show that the nonresident defendant's contacts with the state are both "continuous and systematic." *Helicopteros*, 466 U.S. at 414-416 (1984).

It is undisputed that IPCI and IPC are Canadian companies. IPC, a pharmaceutical company, is a wholly owned subsidiary of IPCI, and engages in the research, development and manufacture of pharmaceutical products in Canada. Each company has one office, each of which are located in Toronto, Ontario, Canada. Neither IPCI nor IPC have any offices, agents or employees in New Jersey. They do not advertise in New Jersey, nor have they ever sold any product in New Jersey.

As noted earlier, it is Astra's burden to establish the existence of personal jurisdiction. *General Elec. Co.*, 270 F.3d 144, 150 (3d Cir. 2001). Astra claims that Defendants' "continuous and systematic" contacts with New Jersey are the following: (1) Defendants have "repeatedly partnered" with New Jersey companies to develop pharmaceutical products, Pl Brf. at 3; (2) Defendants engaged a consultant from New Jersey; (3) Defendants have used a New Jersey Transfer Agent; (4) Defendants have sourced

materials and equipment from New Jersey; (5) Defendants have paid "more taxes in New Jersey than the majority of, if not all, other states;" Pl. Brf. at 11; (6) Defendants have negotiated and entered confidentiality agreements with New Jersey entities; and (7) Defendants have "assert[ed] counterclaims in this Court," Pl. Brf. at 11.  However, a close examination of the facts behind Astra's argument shows neither IPCI's nor IPC's contacts with New Jersey are sufficient to permit the exercise of general jurisdiction.

First, the Court finds that the drug development agreements entered into by IPC with New Jersey companies are inadequate to support the existence of general jurisdiction, either alone or collectively with other "contacts."  The record shows that in 2005 IPC entered into a product development agreement with Elite Laboratories, Inc. and Elite Pharmaceuticals, Inc. (together, "Elite"), Delaware corporations with their principal places of business in New Jersey.  The agreement with Elite was related to development of a generic Prevacid product; thus, it is unrelated to the ANDA product at issue in this lawsuit.  Representatives of IPC last visited New Jersey in 2005 in connection with the agreement.  Moreover, development activities under the agreement never commenced, and no activity has taken place in connection with the agreement since 2005.

IPC entered into three similar development agreements with Par Pharmaceutical, Inc. ("Par") in 2005, 2006 and 2007 respectively.  The first related to a generic version of Focalin XR and the second to a generic Coreg CR product.  While the drug that was the subject of the third agreement is undisclosed, there is no evidence that the agreement relates to IPC's present ANDA product.  Representatives from IPC last visited New Jersey in connection with these agreements in 2009.  There is no evidence that any of the work in

connection with these Par agreements was performed in New Jersey.  Rather, such work was performed primarily in Canada.  Allport Dep. at 77, 93-94, 101-102, 107-108.

Second, the relatively random purchases over a period of many years of goods and services by IPC from companies located in New Jersey are also insufficient, individually or collectively with other contacts, to confer general jurisdiction over Defendants.  The evidence shows that purchases Defendants have made from New Jersey are minimal and fairly isolated.  These include consulting and banking services,[1] some raw materials and equipment.  The Supreme Court has made clear that "mere purchases, even if occurring at regular intervals,[2] are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (footnote added) (finding no general jurisdiction over foreign corporation that: (1) solicited helicopter services in Texas; (2) negotiated the contract for such service in Texas; (3) purchased about eighty-percent of its helicopters and related equipment from Texas vendors at regular intervals; and (4) sent employees for training in Texas over the course of seven years).

Third, the Court turns to Astra's contention regarding Defendants' tax payments.  Plaintiffs assert in their brief that Defendants' "annual tax payments in New Jersey are routinely one of, if not the highest payment, among all 50 states."  Pl. Brf. at 6.  Astra goes on to highlight the fact that in 2010 "IPC paid more tax in New Jersey than any other state."  *Id.*  Conspicuously absent from Astra's brief, however, is any reference to what kind of tax

---

[1] The consulting agreement pointed to by Plaintiffs was performed in 2004 to 2005 and, further, was performed in New York.  Allport Dep. at 158.

[2] Which is not the case here.

7

Astra is talking about or the amounts paid. It is no wonder. It turns out that Astra is referencing sales tax paid by IPCI, which IPCI paid to 26 states in 2009 and 32 states in 2010. Records show that the amounts paid to individual states over the two years range from $.01 (Wyoming in 2009) to $26.95 (New Jersey in 2010). IPCI also paid New Jersey $10.13 in 2009. Czarnecki Decl. at Exs. Q and R.

These tax payments appear to be the only "contact" with New Jersey that Astra has established for IPCI. While the Court will concede that the $10.13 that IPCI paid to New Jersey in 2009, for example, dwarfs the $.01 it paid to Wyoming, the Court finds Astra's arguments (namely that IPCI's "annual tax payments in New Jersey are routinely one of, if not the highest payment, among all 50 states" and that "IPC paid more tax in New Jersey [in 2010] than any other state") to be more than a bit overstated. Indeed, the annual amounts in question are $27 and $10. Simply put, the Court finds these tax payments insufficient to confer general jurisdiction over IPCI.

Last, the Court finds that the four confidentiality agreements Astra has identified as well as the counterclaim filed by IPC in an unrelated case, alone or collectively with other contacts, are also insufficient to support general jurisdiction. The agreements cited by Astra expressly state they are in connection with "potential" or "possible" business relationships, and there is no evidence of these relationships being consummated. *Id.* at Exs. S, T and V. As far as the litigation in which IPC asserted the counterclaim, the litigation in question is being conducted pursuant to an agreement between IPC and Par, which gives Par control over the litigation.

In sum, the evidence Astra cites to does not establish that either IPC or IPCI have continuous and systematic contacts with New Jersey. As, such Astra has not shown that general *in personam* jurisdiction exists for either IPC or IPCI.

C.  Specific Jurisdiction

"Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir.2007). The analysis with respect to specific jurisdiction exists involves a three-part inquiry:

> First, the defendant must have purposefully directed his activities at the forum. Second, the plaintiff's claim must arise out of or relate to at least one of those specific activities. Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise comport[s] with fair play and substantial justice."

*Marten*, 499 F.3d at 296 (citations and internal quotations omitted, alteration in original). The analysis of questions of specific jurisdiction focuses on the relationship between the claims and contacts. *Id.* The evaluation is generally done on a claim-by-claim basis, although "it may not be necessary to do so for certain factually overlapping claims." O'Conner, 496 F.3d at 318 n. 3.

Here, Astra's claim arises from IPC's filing of an ANDA seeking FDA approval to market quetiapine tablets, the filing of the ANDA being the technical act of infringement. Astra points to three activities they allege were "purposefully directed" at New Jersey from which Astra alleges its claim arose.

First, Astra states that Defendants' used an ingredient – magnesium stearate – to manufacture the proposed ANDA product that is sourced from a company that has an office in New Jersey. However, there is no evidence that Defendants had any dealing with the company's New Jersey office. Rather, the evidence shows that Defendants' dealing are with

the St. Louis, Missouri, office and, further, the magnesium stearate was produced in St. Louis.  Kappel Decl. Exs. B, C.

Second, Astra notes that IPC's ANDA states that one of the four sources for the quetiapine tablets' packaging is a company located in New Jersey.  However, Astra's claims here in this case arise primarily from the quetiapine tablets themselves and not their packaging.

Third, Astra claims that Defendants' "relied, at some point, on Drug Master File ["DMF"] No. 20845 for quetiapine hemifumarate, which is held by Hetero Labs Limited, a company that uses Pharm Q, Inc. ("Pharm Q"), a Parsippany, New Jersey company, as its U.S. Regulatory agent."  Pl. Brf. at 8.  However, IPC did not include that DMF in its ANDA filing that is at issue in this case.  Rather, the DMF upon which IPC relied was from a company in Massachusetts.  Allport Dep. at 149-150.

None of the three elements of the specific jurisdiction analysis have been satisfied.  Defendants have directed little, if any, of their activities to the forum.  To the extent that IPC or IPCI have directed any activities directed to the forum, Plaintiff's claims do not arise from those activities.  Indeed, this case has nothing to do with New Jersey.  IPC's generic product was not developed or tested in New Jersey, the ANDA at issue was not prepared in New Jersey, none of the ingredients for it will be sourced from New Jersey, and none has been sold in New Jersey.  The Court finds that Astra has not established that specific jurisdiction exists here.

## III.  CONCLUSION

Finding that it lacks personal jurisdiction over both Defendants, the Court shall grant Defendants' motion.  Because an identical action has been filed and is pending in the Southern District of New York, the Court shall dismiss, rather than transfer, the complaint for lack of personal jurisdiction.  An appropriate Order accompanies this Opinion.


/s/ JOEL A. PISANO
United States District Judge


Dated:  February 15, 2012